# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| CARL SCOTT RUGER, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CR419-036 |
| | ) | CV422-272 |
| | ) | |
| UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Carl Scott Ruger was convicted, after pleading guilty, of a single count of production of child pornography by a parent or guardian, in violation of 18 U.S.C. §§ 2251(b), (e).  *See* doc. 65 at 1 (Judgment).[1]  He was sentenced to three hundred and sixty months of imprisonment and a life term of supervised release.  *See id.* at 2-3.  He did not appeal.  *See generally* docket; *see also* doc. 71 at 2.  Represented by counsel, Ruger moved to vacate the judgment, pursuant to 28 U.S.C. § 2255.  *See* doc. 71.  The Government responded to Ruger's Motion, conceding that resolution of one of the asserted grounds merited an evidentiary hearing.  *See*

---

[1]  The Court cites to the criminal docket in CR419-036 unless otherwise noted.

*generally* doc. 78; *see also id.* at 18-19.  The Court held an evidentiary hearing on June 27, 2023.  Doc. 83 (Minute Entry).  The Government filed a post-hearing brief.  Doc. 85.  Ruger did not.  *See generally* docket. Ruger's Motion is, therefore, ripe for disposition.   For the reasons explained below, it should be **DENIED**.  Doc. 71.

Movant raised two grounds in his Motion.  *See* doc. 71 at 4-5.  Both grounds assert that his retained trial counsel, Mr. William J. Turner, *see id.* at 10, provided ineffective assistance.  Ruger asserts that Turner was ineffective for (1) failing to file a direct appeal despite Ruger's request that he do so, *id.* at 4, and (2) failing to "follow up on Rule 35 Motion for Physical / Mental Examination," *id.* at 5.  The Government responds that the second claim should be dismissed as "vague, conclusory, and unsupported," doc. 78 at 14, and because, to the extent it can be understood, it is meritless, *id.* at 15-16 ("[T]rial counsel could not have been ineffective for failing to follow up on a motion based on an inapplicable civil rule in Ruger's criminal case."), and was waived by his guilty plea, *id.* at 15.  The hearing and subsequent briefing concerned, exclusively, Ruger's assertions in Ground One.

Ground Two may be resolved with dispatch.  The Government is correct that it is fatally defective.  Ruger did not address the Government's multiple, and independently sufficient, arguments why Ground Two fails.  *See generally* docket.  Ground Two states, in its entirety, "[t]rial counsel did not follow up on Rule 35 Motion for Physical / Mental Examination."  Doc. 71 at 5.  Ruger never even attempts to explain what steps he contends counsel should have taken to "follow up."  Moreover, as the Government points out, it is not clear what a "Rule 35 Motion" means in the criminal context, as it appears to invoke an inapplicable Rule of Civil Procedure.  Doc. 78 at 14-15 (citing, *inter alia*, *United States v. Beiter*, 2022 WL 14458322, at *1 (11th Cir. Oct. 25, 2022)).

The Government argues that Ground Two is "vague, conclusory and unsupported."  Doc. 78 at 14 (citing, *inter alia. Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001)).  Even assuming that the basis of the asserted ground could be discerned from Ruger's terse assertion, and assuming further that some argument could be made for application of the Civil Rules in a criminal proceeding, Ruger's guilty plea waived all non-jurisdictional pre-plea defects, including ineffective assistance of

counsel. *See* doc. 78 at 15; *see also, e.g., Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam). Finally, assuming that all of the previous defects were somehow cured, the Government is correct that Ruger does not even hint at how he was prejudiced by the alleged failure, which, as discussed more fully below, is fatal to an ineffective assistance claim. *See* doc. 78 at 15-16 (citing, *inter alia*, *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1332 (11th Cir. 2013)). For any one of those independently sufficient reasons, Ground Two of Ruger's Motion fails.

Ground One of Ruger's Motion asserts that his counsel provided ineffective assistance when he failed to file a direct appeal of Ruger's sentence, despite being instructed to do so. *See* doc. 71 at 4. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A convicted defendant must meet two components to establish that counsel's assistance was so defective as to require reversal of a conviction or sentence: (1) his counsel's performance was deficient, i.e., the

performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. *Id.* at 687.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000) the Supreme Court discussed the application of the *Strickland* standard to allegations that an attorney failed to file a notice of appeal. The Court noted that it had "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)). In the absence of explicit instructions, courts must consider whether counsel consulted with the defendant about an appeal. *Id.* at 478. If counsel did not consult the defendant, then the question becomes "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id. Flores-Ortega* established that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. Prejudice is presumed in cases where an attorney disregards specific

instructions, but not in failure-to-consult cases. *See Garza v. Idaho*, 586 U.S. 232, 237 (2019); *Flores-Ortega*, 528 U.S. at 484-486. Ruger's Motion presents questions of fact at several stages of the *Flores-Ortega* analysis.

In Ground One, Ruger asserts that his counsel was ineffective because he "did not file an appeal even though he was directed to do so . . . ." Doc. 71 at 4. At the hearing, Ruger testified that he did not speak with Mr. Turner after his sentencing. *See* doc. 84 at 7. Moreover, he testified that he never had any further contact with Mr. Turner. *Id.* Ruger testified that he sent Mr. Turner correspondence expressing his desire to file an appeal. *Id.* at 11. Ruger subsequently clarified that he had never verbally instructed Mr. Turner to appeal but had only stated his desire in the letters. *Id.* at 15, 18-19. Mr. Turner testified that, although he met briefly with Ruger after his sentencing, Ruger was "in kind of shock," and did not instruct him to file an appeal. *Id.* at 26-27. Finally, Turner testified that he did not receive any correspondence from Ruger. *Id.* at 43-44.

The Government's post-hearing briefing suggests that the Court may reject Ruger's argument that he has shown *per se* ineffectiveness under *Flores-Ortega* because Mr. Turner disregarded his direct

instructions by crediting Mr. Turner's testimony over Ruger's.  Doc. 85 at 28-30.   Despite some ambiguity in Ruger's testimony concerning the details of his correspondence, *see id.* at 30, Ruger's testimony that he sent correspondence is not rendered incredible, even fully crediting Mr. Turner's testimony that he never received any.   Similarly, Ruger's testimony that he sent correspondence does not cast any doubt upon Mr. Turner's testimony that he never received it.   However, even assuming that Ruger sent a letter specifically instructing Turner to appeal, the fact that Turner never received those instructions precludes a finding of *per se* ineffective assistance under *Flores-Ortega*.

Several courts have confronted circumstances virtually identical to the facts here.  In *Armstrong v. United States*, the court observed that "it could be that Petitioner did in fact draft and send the alleged letter, but it could also be true that counsel just never received it." 2019 WL 464967, at *7 (E.D. Tenn. Feb. 6, 2019).  The court explained that whether the Petitioner sent the letter was "not necessarily pertinent.  The controlling fact, instead, is whether [his counsel] was actually directed . . . to file a notice of appeal."  *Id.*  "An attorney cannot 'disregard' a defendant's unknown desire for an appeal."  *Id.* (alteration and citation omitted).

Thus, the court declined to find ineffective assistance *per se* and proceeded to consider whether counsel had adequately consulted his client concerning the appeal.  *See id.* at *7-*8.

Similarly, in *United States v. Walls*, the United States District Court for the Eastern District of Kentucky confronted a movant's assertion of ineffective assistance, under *Flores-Ortega*, where he had pleaded guilty and waived his right to appeal.  2008 WL 927926, at *9 (E.D. Ky. Apr. 4, 2008).  The movant alleged that he sent multiple letters to his counsel specially requesting an appeal.  *Id.* at *9-*10.  His counsel testified by affidavit that he had not received any of the letters.  *Id.* at *10.  Notwithstanding the court's skepticism that the letters had ever been sent, it concluded that counsel's unrebutted testimony that they had never been received precluded a finding of *per se* ineffective assistance. *Id.* at *10-*11, *10 n. 3. ("Following *Flores-Ortega*, having concluded based upon the unrebutted affidavit of trial counsel that he never received any of the letters or other instructions from the defendant that he wished to appeal, this court must next determine whether counsel consulted with the defendant concerning his appeal rights.").  *But see Pineda-Garcia v. United States*, 2017 WL 9478490, at *1 (N.D. Ga. Mar.

24, 2017) (applying *Flores-Ortega*'s *per se* rule where defendant directed counsel to appeal in Spanish but counsel did not hear or understand the instruction).[2]

Given that persuasive authority, the Court concludes that *Flores-Ortega*'s *per se* rule is not triggered unless a defendant specifically instructs counsel to file an appeal and those instructions are, at least, received.[3]   Both Ruger and Turner's mutually consistent testimony

---

[2] *Pineda-Garcia* is distinguishable from *Armstrong* and *Walls*. A letter that is not received renders the instructions contained in the letter "unknown," and "[a]n attorney cannot 'disregard' a defendant's unknown desire for an appeal." *Armstrong*, 2019 WL 464967, at *7 (alteration and citation omitted). Pineda-Garcia's request, on the other hand, was "disregarded," even if counsel's disregard was unintentional or based on a language barrier.

[3] The Government suggests that Mr. Turner "reasonably followed Ruger's mother's instructions to not file an appeal." Doc. 85 at 31. The Government states that the Eleventh Circuit's opinion *Rios v. United States*, 783 F. App'x 886 (11th Cir. 2019) supports the conclusion that a "defendant can express instruction regarding an appeal to counsel through family members." Doc. 85 at 28. That is, to say the least, an ambitious reading of *Rios*. In *Rios*, the Eleventh Circuit noted that attempts by a defendant's family members to direct an attorney to file an appeal were relevant. 783 F. App'x at 892. *Rios* does not suggest that an attorney may discharge his or her obligation to consult with a defendant about an appeal by accepting second-hand instructions from third-parties, family members or not. The Government's assertion ignores the asymmetry between instructions to file an appeal and instructions not to file an appeal. As *Flores-Ortega* recognized, "filing a notice of appeal is a purely ministerial task . . . ." 528 U.S. at 477. The clear implication is that counsel should perform that ministerial task when there is any reason to believe a defendant wishes to appeal, even in the absence of any discernable meritorious basis. *Flores-Ortega* also expressly recognizes the obvious and fundamental principle that "the decision to appeal *rests with the defendant* . . . ." *Id.* at 479 (emphasis added).

The Government also cites *Medina v. United States*, 167 F. App'x 128 (11th Cir. 2006), in support of its argument that Turner could discharge his duty to consult by

support a finding that Ruger sent instructions, but Turner never received them. Since Ruger's instructions remained unknown to Turner, he was not *per se* ineffective for failing to follow them.

Even if Mr. Turner was not *per se* ineffective, "[t]he analysis does not end there . . . ." *Armstrong*, 2019 WL 464967, at *8. Where a defendant has not made his or her desires concerning an appeal explicit, courts first consider whether counsel "consulted" the defendant. *See, e.g., Flores-Ortega*, 528 U.S. at 478. "Consult" in this context "convey[s] a

---

consulting with Ruger's mother. Doc. 85 at 28. While the Court of Appeals noted that Medina "failed to explain why he could not have asked his brother either to hire an alternative counsel or notify the court of his desire to appeal," *Medina*, 167 F. App'x at 135, it did so only after expressly disavowing any conclusion concerning the deficiency of counsel's performance, *id.* at 135 ("[W]e need not determine whether [counsel's] failure to consult with [Defendant] constituted deficient performance because [Defendant] has failed to establish the prejudice-prong in *Roe* . . . ."). To read *Medina*, as the Government suggests, as "affirming denial of failure-to-file-appeal claim where the defendant's family, who were in contact with trial counsel, failed to follow up with trial counsel about any appeal or hire alternative counsel to file an appeal," doc. 85 at 31, ignores the conceptual structure of the opinion.

The Government's startling argument that a Defendant's family members can somehow stand in the defendant's place for purposes of determining the scope of his appellate rights strains the limits of zealous advocacy. The Court suspects that the Government would not adopt such a cavalier attitude to the attorney-client relationship if the issue in dispute were, for example, whether the presence of a defendant's family member during a consultation waived attorney-client privilege. The fact that Ruger and Turner relied on Ruger's mother as a go-between and Ruger's concession that "his mother had authorization to talk about his case," doc. 85 at 29, do not even approach the sort of delegation of authority that might permit Ruger's mother to affirmatively waive his substantive rights. Given the overwhelming obviousness of Ruger's failure to discharge his burden to show he suffered any prejudice, notwithstanding Turner's potentially deficient performance, discussed below, the Government's misbegotten argument is, however, moot.

specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* There is no dispute that, prior to sentencing, Ruger and Turner discussed Ruger's appellate rights under the plea agreement. *See* doc. 84 at 32. As discussed above, Ruger and Turner's testimony does directly conflict on whether they spoke after Ruger's sentencing to discuss his wishes about an appeal.

Although the Court is not aware of any binding authority, the United States Court of Appeals for the Fifth Circuit has recently held that counsel's consultation with her client about an appeal prior to sentencing could not satisfy her obligations under *Flores-Ortega*. *See United States v. Tighe*, 91 F.4th 771, 775-76 (5th Cir. 2024) (quoting *United States v. Cong Van Pham*, 722 F.3d 320, 324 (5th Cir. 2013)). *Tighe* explained that counsel "could not have properly consulted with [Defendant] about an appeal prior to sentencing when she gave him his notice of right to appeal because she would not yet have known the advantages and disadvantages of taking an appeal." *Id.* at 775 (internal quotations and citation omitted). However, the courts of appeals are not in unanimous agreement. *See, e.g., McCormick v. United States*, 72 F.4th

130, 134 n. 1 (6th Cir. 2023). The Eleventh Circuit has reserved any holding on whether presentencing consultation can satisfy *Flores-Ortega*. *Id.* (citing *Otero v. United States*, 499 F.3d 1267, 1270 n. 3 (11th Cir. 2007) ("[W]e assume *arguendo* (but expressly do not decide) that counsel[, who consulted before sentencing, but not after,] did not consult with [Defendant] as that term is contemplated in *Flores-Ortega* . . . .")). Following the limited Eleventh Circuit authority, the Court will assume, *arguendo*, that the discussions of Ruger's appellate rights, before his sentencing, were not "consultations" within the meaning of *Flores-Ortega*.

The Court finds Mr. Turner's testimony that he spoke to Ruger, briefly, after sentencing, credible. Crediting that testimony, that discussion was limited. Mr. Turner testified that Ruger "was very taken aback," and "shocked." Doc. 84 at 31. During their discussion "he was just kind of sitting there, while we were trying to talk . . . ." *Id.* After that meeting, Turner concedes that he never met with or communicated with Ruger again. *Id.* at 27. He did, however, communicate with Ruger's mother. *Id.* She informed him that Ruger intended to hire another attorney to pursue the appeal. *See id.*

12

The United States District Court for the Northern District of Texas considered whether an attorney's consultation with a defendant's family member could discharge the duty to consult, under *Flores-Ortega*. *See Dillard v. United States*, 2019 WL 7759069, at *4 (N.D. Tex. July 31, 2019). The Court found "that [counsel's] belief that she sufficiently counseled [Defendant's] mother about the advantages and disadvantages of appealing did not obviate her duty to consult with [Defendant] personally about an appeal." *Id.* The court also considered authority proffered by the Government concerning family members' ability to vicariously consult and pointed out that the authority was unequivocal "that counsel's consultation with/through a family member was insufficient where counsel otherwise failed to confirm the defendant's wishes." *Id.* (collecting cases). To be sure, *Dillard* concerned transmission of information to a defendant from family members, but the difference is irrelevant. The court's conclusion in *Dillard* that *Flores-Ortega* and its progeny require counsel to consult *with the defendant* and "confirm [his or her] wishes," concerning an appeal is compelling, even if not binding on this Court. Moreover, to the extent Turner's communications with Ruger's mother are relevant at all, they indicated

that Ruger desired an appeal. Turner's conceded failure to either confirm that successor counsel had appeared or consult with Ruger about the appeal appears unreasonable.

Even if Turner's communications with Ruger's mother did not trigger Turner's duty to consult with him, Turner's testimony concerning Ruger's demeanor during their post-sentencing meeting likely gave him "reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. The Court is inclined to think that a defendant who is so shocked by his sentence that he is effectively unable to communicate, as Turner testified Ruger was, has "reasonably demonstrated . . . that he [is] interested in appealing," such that counsel has an obligation to, at least, consult with him further. However, the Court need not definitively conclude that Turner's performance was deficient because, regardless of how deficient Turner's performance might have been, Ruger has absolutely failed to even allege, much less show, that he suffered any prejudice.

*Flores-Ortega* is clear that, "[i]f the defendant cannot demonstrate that, but for counsel's deficient performance[ in failing to consult him about an appeal], he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." 528 U.S. at 484; *see also id.* ("[W]e hold that, to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."). The Court further explained that the existence of non-frivolous grounds for appeal were significant, but not dispositive. *Id.* at 485-86. "[A] defendant's inability to specify the points he would raise were his right to appeal reinstated, [cit.], will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed." *Id.* at 486 (quotations and citation omitted). However, demonstrated interest in an appeal "alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id.* As discussed above, Ruger has not even

15

asserted, much less shown, anything more than "that he sufficiently demonstrated to counsel his interest in an appeal." *Id.*

Ruger's Motion does not identify any issue that he would have raised on direct appeal, but for Turner's failure to file one. *See* doc. 71 at 4. At the evidentiary hearing, the Assistant United States Attorney asked Ruger about what he would have intended to appeal. *See* doc. 84 at 15. He never clearly articulated any issue. *See id.* at 15-18. The closest he came was agreeing with the Assistant United States Attorney that he "had a general feeling of unhappiness because [he] got the maximum time." *Id.* at 18. The Government's post-hearing brief points to the Eleventh Circuit's opinion in *Medina v. United States* in support of its argument that Ruger has not shown that he suffered any prejudice from Turner's failure to consult him about an appeal. *See* doc. 85 at 38.

*Medina* considered the fact that the movant "conceded that he always could contact his brother and failed to explain why he could not have asked his brother either to hire alternative counsel or notify the court of his desire to appeal." 167 F. App'x at 135. The court concluded that, notwithstanding that Medina "cited to [appellate] issues that he believe[d] would have been meritorious, or at least arguable," he had

failed to establish prejudice. *Id.* at 135-36. Moreover, as in *Medina*, there was a substantial delay between the judgment and Ruger's § 2255 motion. *Compare id.* at 135 (". . . Medina did not file the instant § 2255 motion, arguing ineffective assistance of counsel and seeking to file a belated direct appeal, until August 23, 2004, more than a year after the court entered his judgment of conviction on August 22, 2003."), *with* doc. 65 (judgment entered Nov. 15, 2021), *and* doc. 71 (§ 2255 Motion filed Nov. 14, 2022). Since Ruger's showing is even less robust than the movant in *Medina*,[4] the Court should find that he has failed to show any prejudice from Turner's failure to consult him about an appeal. *See also Van Trong Phan v. United States*, 2010 WL 598703, at *12 (M.D. Fla. Feb. 17, 2010).

In summary, Ruger's 28 U.S.C. § 2255 Motion, as to both grounds asserted, should be **DENIED**. Doc. 71. Applying the Certificate of

---

[4] In response to his counsel's question about whether he made "any efforts to try to file the appeal on [his] own," Ruger responded that he "started to, but then [he] started thinking and talking to different people, and that's when [he] retained [his current counsel] through [his] mom." Doc. 84 at 9. Ruger testified that his current counsel was not retained until "well over a year after [Ruger's] sentencing." *Id.* The fact that Ruger was, apparently, still equivocating about his appeal, *i.e.* "thinking and talking to different people," only emphasizes the fact that he has not demonstrated a "reasonable probability" that, but for counsel's deficient performance, he would have timely appealed.

Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at \* 1–2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant") (emphasis added).

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are

advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 22nd day of May, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA